**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

**WHETSTONE ELECTRONICS, LLC**
    Plaintiff,

    **v.**

| | |
|---|---|
| **(1)** | **EPSON AMERICA, INC.;** |
| **(2)** | **EASTMAN KODAK COMPANY;** |
| **(3)** | **FUJIFILM SERICOL USA INC;** |
| **(4)** | **BEIJING FOUNDER ELECTRONICS CO. LTD. D/B/A FOUNDER ELECTRONICS;** |
| **(5)** | **GANDI INNOVATIONS LIMITED;** |
| **(6)** | **GANDI INNOVATIONS LLC;** |
| **(7)** | **PRINTWARE, LLC;** |
| **(8)** | **HIGHWATER DESIGNS LTD.;** |
| **(9)** | **HEWLETT-PACKARD COMPANY;** |
| **(10)** | **HEWLETT-PACKARD COLORSPAN, INC. ;** |
| **(11)** | **INDIGO AMERICA INC.;** |
| **(12)** | **INCA DIGITAL PRINTERS LIMITED;** |
| **(13)** | **MIMAKI USA INC.;** |
| **(14)** | **MUTOH AMERICA INC.;** |
| **(15)** | **OCE NORTH AMERICA, INC. D/B/A OCE NORTH AMERICA, INC.;** |
| **(16)** | **OCE IMAGISTICS INC.;** |
| **(17)** | **OCE BETTER BUSINESS MACHINES;** |
| **(18)** | **ROLAND DG CORPORATION;** |
| **(19)** | **ROLAND DGA CORPORATION;** |
| **(20)** | **XANTE CORPORATION;** |
| **(21)** | **XITRON, INC.;** |
| **(22)** | **G.E. RICHARDS GRAHPIC SUPPLIES CO., INC.;** |
| **(23)** | **TORG CORPORATION;** |
| **(24)** | **HAROLD M. PITMAN COMPANY;** |
| **(25)** | **RTI GLOBAL, INC.;** |
| **(26)** | **ZUND AMERICA, INC;** |
| **(27)** | **AGFA CORPORATION;** |
| **(28)** | **FUSION SYSTEMS INTERNATIONAL;** |
| **(29)** | **RIPMALL TECHNOLOGIES, INC.;** |

**Civil Action No.**

**JURY TRIAL DEMANDED**

**and**
**(30)    DURST IMAGE TECHNOLOGY US**
          **LLC.**
          Defendants.

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Whetstone Electronics, LLC makes the following allegations against Epson America, Inc., Eastman Kodak Company, FujiFilm Sericol, USA Inc., Beijing Founder Electronics Co. Ltd. d/b/a Founder Electronics, Gandi Innovations Limited, Gandi Innovations LLC, Printware LLC, Highwater Designs Ltd., Hewlett-Packard Company, Hewlett-Packard ColorSpan, Inc., Indigo America Inc., Inca Digital Printers Limited, Mimaki USA Inc., Mutoh America Inc., Oce North America, Inc. d/b/a Oce North America, Inc., Oce Imagistics Inc., Oce Better Business Machines, Roland DG Corporation, Roland DGA Corporation, Xante Corporation, Xitron, Inc., G.E. Richards Graphic Supplies Co., Inc., Torg Corporation, Harold M. Pitman Company, RTI Global, Inc., Zund America, Inc., Agfa Corporation, Fusion Systems, International, RIPMall Technologies, Inc., and Durst Image Technology US LLC (collectively the "Defendants").

## PARTIES

1.      Plaintiff Whetstone Electronics, LLC ("Plaintiff") is a Texas limited liability company with its principal place of business at 104 East Houston Street, Suite 160, Marshall, TX 75670.

2.      On information and belief, Defendant Epson America, Inc. ("Epson") is a California corporation with its principal place of business at 3840 Kilroy Airport Way, Long Beach, CA 90806.  Epson is qualified to do business in the State of Texas and has appointed

United States Corp. Co., 701 Brazos Street, Suite 1050, Austin, TX 78701 as its agent for service of process.

3. On information and belief, Defendant Eastman Kodak Company ("Kodak") is a New Jersey corporation with its principal place of business at 343 State Street, Rochester, NY 14650. Kodak is qualified to do business in the State of Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Dallas, TX 75201 as its agent for service of process.

4. On information and belief, Defendant Fujifilm Sericol USA Inc. ("Fujifilm") is a Delaware corporation with its principal place of business at 1104 W. Cambridge Circle Drive, Kansas City, KS 66103. Fujifilm is qualified to do business in the State of Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Dallas, TX 75201, as its agent for service of process.

5. On information and belief, Defendant Beijing Founder Electronics Co. Ltd. d/b/a Founder Electronics ("Founder") is a China corporation with its principal place of business at Founder Bldg. Number 9, 5th St., Shangdi Information Industry Base, Haiden District, Beijing, 10085, China. Founder maintains a US office at 7380 West 20th Ave. #117 Hialeah, FL 33016.

6. On information and belief, Defendant Gandi Innovations Limited ("Gandi") is a Canada corporation with its principal place of business at 5975 Falbourne St, Mississauga, ON L5R 3V8, Canada.

7. On information and belief, Defendant Gandi Innovations LLC, a subsidiary of Gandi Innovations Limited, ("Gandi LLC") is a Texas limited liability company with its principal place of business at 941 Isom Road, San Antonio, TX 78216. Gandi LLC has appointed Yan Yan, 70 El Paso, San Antonio, TX 78204, as its agent for service of process.

8.      On information and belief, Defendant Printware LLC ("Printware") is a Minnesota corporation with its principal place of business at 2935 Waters Road Suite 160, St. Paul MN 55121.  Printware has not appointed an agent for service of process, but maintains a registered office at 2935 Waters Road Suite 160, St. Paul MN 55121.

9.      On information and belief, Defendant HighWater Designs Ltd., a subsidiary of Printware LLC, ("HighWater") is a UK corporation with its principal place of business at Cotswold Building, The Barlands, London Road, Cheltenham, GL52 6UT, England.

10.     On information and belief, Defendant Hewlett-Packard Company ("HP") is a Delaware corporation with its principal place of business at 3000 Hanover Street, Palo Alto, CA 94304.  HP is qualified to do business in the State of Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Dallas, TX 75201, as its agent for service of process.

11.     On information and belief, Defendant Hewlett-Packard ColorSpan, Inc., a subsidiary of Hewlett-Packard Company, ("HP ColorSpan") is a Delaware corporation with its principal place of business at 11311 K-Tel Drive, Minnetonka, MN 55343.  HP ColorSpan has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, as its agent for service of process.

12.     On information and belief, Defendant Indigo America Inc., a subsidiary of Hewlett-Packard Company, ("Indigo") is a Delaware corporation with its principal place of business at P.O. Box 4669, Colorado Springs, CO 80949.  Indigo is qualified to do business in the State of Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Dallas, TX 75201, as its agent for service of process.

13.     On information and belief, Defendant Inca Digital Printers Limited ("Inca") is a UK corporation with its principal place of business at 511 Coldhams Lane, Cambridge, CB1 3JS, United Kingdom.

14.     On information and belief, Defendant Mimaki USA Inc. ("Mimaki") is a Georgia corporation with its principal place of business at 150 Satellite Boulevard Suite A, Suwanee, GA 30024.  Mimaki is qualified to do business in the State of Texas and has appointed National Registered Agents, Inc., 16055 Space Center Drive, Suite 235, Houston, TX 77062, as its agent for service of process.

15.     On information and belief, Defendant Mutoh America Inc. ("Mutoh") is a Nevada corporation with its principal place of business at 2602 S. 47th Street, #102, Phoenix, AZ 85034. Mutoh has appointed The Corporation Trust Company of Nevada, 6100 Neil Road, Suite 500, Reno, NV 89511, as its agent for service of process.

16.     On information and belief, Defendant Oce North America, Inc. d/b/a Oce North America, Inc. ("Oce") is a Delaware corporation with its principal place of business at 100 Oakview Drive, Trumbull, CT 06611.  Oce is qualified to do business in the State of Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Dallas, TX 75201, as its agent for service of process.

17.     On information and belief, Defendant Oce Imagistics Inc. ("Oce Imagistics") is a Delaware corporation with its principal place of business at 100 Oakview Drive, Trumbull, CT 06611.  Oce is qualified to do business in the State of Texas and has appointed National Registered Agents Inc., 16055 Space Center Drive, Suite 235, Houston, TX 77062, as its agent for service of process.

18.     On information and belief, Defendant Oce Better Business Machines ("Oce Better Business") is a Texas business having its principal place of business at 7557 Phelan Boulevard, Beaumont, TX 77706.  Alternatively, Oce Better Business has a principal place of business at 1132 NW Stallings, Suite 101, Nacogdoches, TX 75964.

19.     On information and belief, Defendant Roland DG Corporation ("Roland") is a Japan corporation with its principal place of business at 1-6-4 Shinmiyakoda, Kita-ku, Hamamatsu-shi, Shizuoka-ken, 431-2103 Japan.

20.     On information and belief, Defendant Roland DGA Corporation, an affiliate of Roland DG Corporation, ("Roland USA") is a California corporation with its principal place of business at 15363 Barranca Parkway, Irvine, CA 92618.  Roland has appointed Junpei Yamato, P.O. Box 910921, Los Angeles, CA 90091, as its agent for service of process.

21.     On information and belief, Defendant Xante Corporation ("Xante") is a Georgia corporation with its principal place of business at 2800 Dauphin Street, Suite 100, Mobile, AL 36606.  Xante has appointed CT Corporation System, 1201 Peachtree Street NE, Atlanta, GA 30361, as its agent for service of process.  Xante also does business as RIPit Imaging Systems.

22.     On information and belief, Defendant Xitron, Inc. ("Xitron") is a Michigan corporation with its principal place of business at 781 Avis Drive, Suite 200, Ann Arbor, MI 48108.  Xitron has appointed James P. Thrush, 781 Avis Drive, Suite 200, Ann Arbor, MI 48108, as its agent for service of process.

23.     On information and belief, Defendant G.E. Richards Graphic Supplies Co., Inc. ("GE Richards") is a Pennsylvania corporation with its principal place of business at 928 Links Avenue, Landisville, PA 17538.  GE Richards has appointed Jeffrey E. Wagner, 928 Links Avenue, Landisville, PA 17538, as its agent for service of process.

24. On information and belief, Defendant Torg Corporation, d/b/a Texas Type, ("Torg") is a Texas corporation with its principal place of business at 12961 Park Central, Suite 1430, San Antonio, TX 78216. Torg has appointed Julius R. Hjulian, 12961 Park Central, Suite 1430, San Antonio, TX 78216, as its agent for service of process.

25. On information and belief, Defendant Harold M. Pitman Company ("Pitman") is a Illinois corporation with its principal place of business at 721 Union Boulevard, Totowa, NJ 07512, and having a distribution center at Capital Center 2, 1605 Crescent Circle - Suite 250, Carrollton, TX 75006. Pitman has appointed Corporation Service Company, 701 Brazos Street, Suite 1050, Austin, TX, as its agent for service of process.

26. On information and belief, Defendant RTI Global, Inc. ("RTI") is a Florida corporation with its principal place of business at 2030 Kai Drive, Sarasota, FL 34231. RIPMall has appointed Kenneth R. Hillier, 2030 Kai Drive, Sarasota, FL 34231 as its agent for service of process.

27. On information and belief, Defendant Zund America, Inc. ("Zund") is a Wisconsin corporation with its principal place of business at 5068 W. Ashland Way, Franklin, WI 53132. Zund has appointed James R. Walden, Jr., 707 West Moreland Boulevard, Waukesha, WI 53188, as its agent for service of process.

28. On information and belief, Defendant Agfa Corporation ("Agfa") is a Delaware corporation with its principal place of business at 100 Challenger Road, Ridgefield Park, NJ 07660. Agfa is qualified to do business in the State of Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Dallas, TX 75201 as its agent for service of process.

29. On information and belief, Defendant Fusion Systems International ("Fusion") has its principal place of business at 12021 NE Airport Way, Portland, OR 97220.

30.     On information and belief, Defendant RIPMall Technologies, Inc. ("RIPMall") is a Florida corporation with its principal place of business at 2030 Kai Drive, Sarasota, FL 34231. RIPMall has appointed Kenneth R. Hillier, 2030 Kai Drive, Sarasota, FL 34231 as its agent for service of process.

31.     On information and belief, Defendant Durst Image Technology US LLC ("Durst") is a Delaware limited liability company with its principal place of business at 50 Methodist Hill Drive, Suite 100, Rochester, NY 14623.  Durst has appointed Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, as its agent for service of process.

## JURISDICTION AND VENUE

32.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

33.     Venue is proper in this district under 28 U.S.C. §§ 1391(c) and 1400(b).   On information and belief, each Defendant has transacted business in this district, and has committed and/or induced acts of patent infringement in this district.

34.     On information and belief, Defendant Epson is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

35. On information and belief, Defendant Kodak is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

36. On information and belief, Defendant Fujifilm is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

37. On information and belief, Defendant Founder is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

38. On information and belief, Defendant Gandi is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses

of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

39.     On information and belief, Defendant Gandi LLC is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

40.     On information and belief, Defendant Printware is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

41.     On information and belief, Defendant HighWater is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

42.     On information and belief, Defendant HP is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements

alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

43.　　On information and belief, Defendant HP ColorSpan is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

44.　　On information and belief, Defendant Indigo is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

45.　　On information and belief, Defendant Inca is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

46.　　On information and belief, Defendant Mimaki is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute,

due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

47.     On information and belief, Defendant Mutoh is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

48.     On information and belief, Defendant Oce is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

49.     On information and belief, Defendant Oce Imagistics is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

50.     On information and belief, Defendant Oce Better Business is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

51.     On information and belief, Defendant Roland is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

52.     On information and belief, Defendant Roland USA is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

53.     On information and belief, Defendant Xante is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses

of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

54.    On information and belief, Defendant Xitron is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

55.    On information and belief, Defendant GE Richards is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

56.    On information and belief, Defendant Torg is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

57.    On information and belief, Defendant Pitman is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the

infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

58.     On information and belief, Defendant RTI is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

59.     On information and belief, Defendant Zund is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

60.     On information and belief, Defendant Agfa is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

61.     On information and belief, Defendant Fusion is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute,

due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

62.     On information and belief, Defendant RIPMall is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

63.     On information and belief, Defendant Durst is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 6,337,746

64.     Plaintiff is the owner by assignment of United States Patent No. 6,337,746 ("the '746 Patent") entitled "Interface Card for Coupling a Computer to an External Device."  The '746 Patent issued on January 8, 2002.  A true and correct copy of the '746 Patent is attached as Exhibit A.

65. Upon information and belief, Defendant Epson has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Epson is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Epson Stylus® Pro Printers 3800, 4880, 7880, 9880, 11880, GS6000 and 4800, 7800, 9800, 4000, 5500, 7600, 9600, 10600, 10000 with Onyx, Colorburst, PosterJet,

Wasatch, and Harlequin RIPs, and Teriostar LP-1020 Series, IP-4010, IP-4500, ColorPainter 64S, 100S printers with Seiko's Terioplot RIP. Defendant Epson is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

66. Upon information and belief, Defendant Kodak has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Kodak is

marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: ovajet, VinylJet, and CadJet series printers with RIPs from one or more of Caldera Graphics, Colorburst Systems, ColorGate – PhotoRIP, Global Graphics, Image Technologies, Onyx Graphics, Scanvec Amiable, Wasatch Computer Technology. Defendant Kodak is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271.

67. Upon information and belief, Defendant Fujifilm has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing

different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Fujifilm is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Inca Printers, including the Spyder 320 Q, Spyder 320-8 Series, Spyder 320+ six colour, Spyder 320+ white, Spyder 320, Spyder 320-e, Spyder 150, Turbo Plus, Turbo Plus 220, Inca Onset and Inca FastJet printers with the Wasatch PC Rip. Defendant Fujifilm is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271.

68. Upon information and belief, Defendant Founder has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing

products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Founder is marketing, distributing, using, selling, offering to sell, and offering to provide support services for: interface adapter cards for a multitude of printing devices including AGFA's AccuSet, SelectSet, Avantra, Phoenix; Heidelberg's Linotype-Hell Herkules, Quasar, Signasetter, LinoType-Hell, R30x0PS; ECRM's VRL, Marlin, StingRay; and various other imagesetter models from: Dainippon, Kodak/CreoScitex, Ultre, Fujifilm, Cron, and Roland. Defendant Founder is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

69.     Upon information and belief, Defendant Gandi has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored

image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Gandi is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Jeti Printers with Wasatch SoftRip, Onyx PosterShop, and Caldera RIP or Shiraz RIP. Defendant Gandi is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

70. Upon information and belief, Defendant Gandi LLC has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device

is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Gandi LLC is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Jeti Printers with Wasatch SoftRip, Onyx PosterShop, and Caldera RIP or Shiraz RIP. Defendant Gandi LLC is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

71.     Upon information and belief, Defendant Printware has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image

data from the random access memory to the printing device interface.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The printing device prints the graphic image in response to image data in a first format.  The infringing products have a means for storing image data, storing image data in a second format different from the first format.  The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device.  For example, without limitation, Defendant Printware is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: HighWatersTorrent RIP and  PCI interface boards interfacing with and enabling output to a wide range of high quality imagesetter output printing devices including Agfa's ProSet, AccuSet, SelectSet, Avantra, and Phoenix series; Crossfield's Magnasetter, ECRM's ID36, Pelbox, VR, Mako, Knockout, Marlin, Stingray, Sunfish, Exxtra's Exxtra, Exxcalibur, Maxxima, Hyphen's SpectraSet, Dash; Linotronic' 200 to 630, Monotype's ExpressMaster, Scangraphic's Largo, Othello, Tempo, Apollo, Futuro, Scantext, Scitex's Dolev, 4Press, 4News, Ultre's Ultresetter, Ultre Vision, 3000/4000/4800 series, and Autologic's III 3850, Canon's BX, BXII.  Defendant Printware is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

72.     Upon information and belief, Defendant HighWater has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the

United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant HighWater is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: HighWatersTorrent RIP and PCI interface boards interfacing with and enabling output to a wide range of high quality imagesetter output printing devices including Agfa's ProSet, AccuSet, SelectSet, Avantra, and Phoenix series; Crossfield's Magnasetter, ECRM's ID36, Pelbox, VR, Mako, Knockout, Marlin, Stingray, Sunfish, Exxtra's Exxtra, Exxcalibur, Maxxima, Hyphen's SpectraSet, Dash; Linotronic' 200 to 630, Monotype's

ExpressMaster, Scangraphic's Largo, Othello, Tempo, Apollo, Futuro, Scantext, Scitex's Dolev, 4Press, 4News, Ultre's Ultresetter, Ultre Vision, 3000/4000/4800 series, and Autologic's III 3850, Canon's BX, BXII. Defendant HighWater is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

73.     Upon information and belief, Defendant HP has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted

into the first format to the printing device. For example, without limitation, Defendant HP is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: ColorSpan 5440uv, 5460uv, 5445uv, 5465uv, 9840uv, and HP Designjet H35100, H35500, H45100, H45500, HP Scitex FB910; with the HP RIP which includes the PCI VideoNet Interface Card; and Indigo presses 3250, 3050, 5000, 5500 with the HP Production Mgr, Smartstream Production Pro Print Server and HP Indigo Scalable RIP. Defendant HP is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

74.    Upon information and belief, Defendant HP ColorSpan has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing

image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant HP ColorSpan is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: ColorSpan 5440uv, 5460uv, 5445uv, 5465uv, 9840uv, and HP Designjet H35100, H35500, H45100, H45500, HP Scitex FB910; with the HP RIP which includes the PCI VideoNet Interface Card. Defendant HP ColorSpan is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

75. Upon information and belief, Defendant Indigo has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device

communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Indigo is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Indigo presses 3250, 3050, 5000, 5500 with the HP Production Mgr, Smartstream Production Pro Print Server and HP Indigo Scalable RIP. Defendant Indigo is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

76.     Upon information and belief, Defendant Inca has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored

image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Inca is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Inca Printers, including the Spyder 320 Q, Spyder 320-8 Series, Spyder 320+ six colour, Spyder 320+ white, Spyder 320, Spyder 320-e, Spyder 150, Turbo Plus, Turbo Plus 220, Inca Onset and Inca FastJet printers with the Wasatch PC Rip. Defendant Inca is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

77. Upon information and belief, Defendant Mimaki has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image

data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Mimaki is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Mimaki JV3, JV4, JV5, JV33, the DS Series, JF, UFJ series, DM2-1810, and the TX and GP family of printers with Mikamis' RasterLinkPro II or III RIP or Wasatch, ErgoSoft, Onyx RIPs. Defendant Mimaki is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

78.     Upon information and belief, Defendant Mutoh has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface

card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Mutoh is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Mutoh wide-format printers, including the Falcon Series, Blizzard Series, Spitfire Series, ValueJet Series, Toucan (PJ) Series, Mutoh's re-branded printers for Kodak, Agfa, Accuplot, SignWarehouse, Epson, Tektronix (Phaser 600); which utilize various RIPs including Mutoh's ISIS Print Manager, Mutoh's Thunderbird Print Server and Caldera, Wasatch, Harlequin, Onyx RIPs. Defendant Mutoh is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

79.     Upon information and belief, Defendant Oce has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product

and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Oce is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Océ 3165, Océ Doc Setter, VarioPrint 2000 and 2100 series, Océ CPS900, Océ CPS800, Océ VarioPrint 6250, CS620, CS650 and Océ VarioPrint® 5000 series, Océ VarioStream 7000 printers, Océ VarioStream 9000 series supported by the Oce SRA3 (Scalable Raster Architecture) Print controller. Defendant Oce is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

80.     Upon information and belief, Defendant Oce Imagistics has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The printing device prints the graphic image in response to image data in a first format.  The infringing products have a means for storing image data, storing image data in a second format different from the first format.  The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device.  For example, without limitation, Defendant Oce Imagistics is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Océ 3165, Océ Doc Setter, VarioPrint 2000 and 2100 series,   Océ CPS900, Océ CPS800, Océ VarioPrint 6250, CS620, CS650 and Océ

VarioPrint® 5000 series, Océ VarioStream 7000 printers, Océ VarioStream 9000 series supported by the Oce SRA3 (Scalable Raster Architecture) Print controller. Defendant Oce Imagistics is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

81.    Upon information and belief, Defendant Oce Better Business has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted

35

into the first format to the printing device. For example, without limitation, Defendant Oce Better Business is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Océ 3165, Océ Doc Setter, VarioPrint 2000 and 2100 series, Océ CPS900, Océ CPS800, Océ VarioPrint 6250, CS620, CS650 and Océ VarioPrint® 5000 series, Océ VarioStream 7000 printers, Océ VarioStream 9000 series supported by the Oce SRA3 (Scalable Raster Architecture) Print controller. Defendant Oce Better Business is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

82. Upon information and belief, Defendant Roland has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing

image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Roland is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Roland's Versacam, Soljet, AdvancedJet, and Hi-Fi family of print devices with Roland's VersaWorks or Colorip RIPs or with Wasatch, Caldera, or Onyx RIPs. Defendant Roland is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

83.     Upon information and belief, Defendant Roland USA has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device

communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Roland USA is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Roland's Versacam, Soljet, AdvancedJet, and Hi-Fi family of print devices with Roland's VersaWorks or Colorip RIPs or with Wasatch, Caldera, or Onyx RIPs. Defendant Roland USA is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

84. Upon information and belief, Defendant Xante has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device

38

is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Xante is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xante/RIPit software RIP, ImagerQ Concerto or OpenRIP Symphony products on workstation PC with Engine Interface Board to deliver print image content to various printing devices including Agfa AccuSet 800, 1000, 1200, 1500, Agfa Avantra 25, 30, 36, 44, Agfa SelectSet 5000, 7000, Agfa/Compugraphic 9400, 9550, 9600, 9800, 9836 and ECRM VR 30, 36, 45, ID-36, Mako 3625, 3675, 4625, 4675, 5625, 108HT, Oasis 3650, Oasis 4650, Knockout 4550, Marlin 2500, 2500HS, 3500, Stingray 5200, 6300, 6300HS; Linotype 200, 230, 260, 300, 330, 500, 530, 560 Ultresetter 72P, 72E, 94P, 94E, Ultre 3000, 4000, Vision 300, Vision 400, ExxtraSetter 300, Exxpress 300 (infrared versions – all metal chassis), RIPit SpeedSetter x1, SpeedSetter x2 (infrared versions – all metal chassis). Defendant Xante is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

85.     Upon information and belief, Defendant Xitron has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the

United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Xitron is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xitron Navigator RIP, using a universal interface card in to deliver print image content to various printing devices including Agfa's -ProSet 9550, 9700, 9800, 9836; Accuset 800, 1000, 1200, 1400,1500; SelectSet 5000, 7000; Avantra 20, 25/25E/25S/25XT, 30/30E, 36, 44/44E, 44S; ProSet 9400; Autologic's 3850, 3850 Turbo, 3850 Aspen SST, ECRM's VR 30, 36, 36HS, 45, 45HS;VRL 36, 45; Pelbox 108, 108HS, 1030, 1045, 1045HS,

12xx series, 15xx series, 2030, 2530, 3000, 3030, Mako 108HT, 3600, 3650, 4600, 4650; Knockout 4550; Marlin 46, 63, 2500 and Stingray 46, 52, 63, Fuji's Javelin Luxel T9000 CTP (a.k.a. Javelin 8000), Dart (a.k.a. Luxel T-6000); Heidelberg's Topsetter Screen PT-R 8000, Topsetter PF 102 Screen PT-R 8600, Primesetter; Linotype's 200P, 200SQ, 230 300D, 500D, 300, 330, 500, 530, 560, 630, 830, 930, Herkules series; Scan Graphic's FPI Largo, Rondo, Othello, Tempo, Apollo, Futuro, ScanText 2030, 205; Scitex's (creo/kodak) Dolev 200/250, 400/450, 800, 800V, 800V2, 2/Press, 4/Press, 4/PressV, 4/News; Screen's DT-R1065, 2035, 2065, 3075, Tanto 6120 MT-R 1100; Ultre's 72P, 72E, 94P, 94E; 300, 400, 3000, 4000, 4800; Hewlett Packard's DesignJet 50, 50PS, 1050, 1055, 2500, 3000, 3500, 5000, 5500, 750C, 800; ENCAD's Novajet 500, 630, 700, 850, Pro-36, Pro-42e, Pro-50, Pro 60e; Epson's Stylus Pro 3000, 5000,7000, 7500, 9000, 9500. Defendant Xitron is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

86. Upon information and belief, Defendant GE Richards has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device

is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant GE Richards is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xitron Navigator RIP, using a universal interface card in to deliver print image content to various printing devices including Agfa's -ProSet 9550, 9700, 9800, 9836; Accuset 800, 1000, 1200, 1400,1500; SelectSet 5000, 7000; Avantra 20, 25/25E/25S/25XT, 30/30E, 36, 44/44E, 44S; ProSet 9400; Autologic's 3850, 3850 Turbo, 3850 Aspen SST, ECRM's VR 30, 36, 36HS, 45, 45HS;VRL 36, 45; Pelbox 108, 108HS, 1030, 1045, 1045HS, 12xx series, 15xx series, 2030, 2530, 3000, 3030, Mako 108HT, 3600, 3650, 4600, 4650; Knockout 4550; Marlin 46, 63, 2500 and Stingray 46, 52, 63, Fuji's Javelin Luxel T9000 CTP (a.k.a. Javelin 8000), Dart (a.k.a. Luxel T-6000); Heidelberg's Topsetter Screen PT-R 8000, Topsetter PF 102 Screen PT-R 8600, Primesetter; Linotype's 200P, 200SQ, 230 300D, 500D, 300, 330, 500, 530, 560, 630, 830, 930, Herkules series; Scan Graphic's FPI Largo, Rondo, Othello, Tempo, Apollo, Futuro, ScanText 2030, 205; Scitex's (creo/kodak) Dolev 200/250, 400/450, 800, 800V, 800V2, 2/Press, 4/Press, 4/PressV, 4/News; Screen's DT-R1065, 2035, 2065, 3075, Tanto 6120 MT-R 1100; Ultre's 72P, 72E, 94P, 94E; 300, 400, 3000, 4000, 4800;

Hewlett Packard's DesignJet 50, 50PS, 1050, 1055, 2500, 3000, 3500, 5000, 5500, 750C, 800; ENCAD's Novajet 500, 630, 700, 850, Pro-36, Pro-42e, Pro-50, Pro 60e; Epson's Stylus Pro 3000, 5000,7000, 7500, 9000, 9500. Defendant GE Richards is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

87.     Upon information and belief, Defendant Torg has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted

43

into the first format to the printing device.  For example, without limitation, Defendant Torg is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xitron Navigator RIP, using a universal interface card in to deliver print image content to various printing devices including Agfa's -ProSet 9550, 9700, 9800, 9836; Accuset 800, 1000, 1200, 1400,1500; SelectSet 5000, 7000; Avantra 20, 25/25E/25S/25XT, 30/30E, 36, 44/44E, 44S; ProSet 9400; Autologic's 3850, 3850 Turbo, 3850 Aspen SST, ECRM's VR 30, 36, 36HS, 45, 45HS;VRL 36, 45; Pelbox 108, 108HS, 1030, 1045, 1045HS, 12xx series, 15xx series, 2030, 2530, 3000, 3030, Mako 108HT, 3600, 3650, 4600, 4650; Knockout 4550; Marlin 46, 63, 2500 and Stingray 46, 52, 63, Fuji's Javelin Luxel T9000 CTP (a.k.a. Javelin 8000), Dart (a.k.a. Luxel T-6000); Heidelberg's Topsetter Screen PT-R 8000, Topsetter PF 102 Screen PT-R 8600, Primesetter; Linotype's 200P, 200SQ, 230 300D, 500D, 300, 330, 500, 530, 560, 630, 830, 930, Herkules series; Scan Graphic's FPI Largo, Rondo, Othello, Tempo, Apollo, Futuro, ScanText 2030, 205; Scitex's (creo/kodak) Dolev 200/250, 400/450, 800, 800V, 800V2, 2/Press, 4/Press, 4/PressV, 4/News; Screen's DT-R1065, 2035, 2065, 3075, Tanto 6120 MT-R 1100; Ultre's 72P, 72E, 94P, 94E; 300, 400, 3000, 4000, 4800; Hewlett Packard's DesignJet 50, 50PS, 1050, 1055, 2500, 3000, 3500, 5000, 5500, 750C, 800; ENCAD's Novajet 500, 630, 700, 850, Pro-36, Pro-42e, Pro-50, Pro 60e; Epson's Stylus Pro 3000, 5000,7000, 7500, 9000, 9500.  Defendant Torg is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

88.    Upon information and belief, Defendant Pitman has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product

and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Pitman is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xitron Navigator RIP, using a universal interface card in to deliver print image content to various printing devices including Agfa's -ProSet 9550, 9700, 9800, 9836; Accuset 800, 1000, 1200, 1400,1500; SelectSet 5000, 7000; Avantra 20, 25/25E/25S/25XT, 30/30E, 36, 44/44E, 44S; ProSet 9400; Autologic's 3850, 3850 Turbo, 3850 Aspen SST, ECRM's VR 30, 36, 36HS, 45, 45HS;VRL 36, 45; Pelbox 108, 108HS, 1030, 1045, 1045HS, 12xx series, 15xx series, 2030, 2530, 3000, 3030, Mako 108HT, 3600, 3650, 4600, 4650;

Knockout 4550; Marlin 46, 63, 2500 and Stingray 46, 52, 63, Fuji's Javelin Luxel T9000 CTP (a.k.a. Javelin 8000), Dart (a.k.a. Luxel T-6000); Heidelberg's Topsetter Screen PT-R 8000, Topsetter PF 102 Screen PT-R 8600, Primesetter; Linotype's 200P, 200SQ, 230 300D, 500D, 300, 330, 500, 530, 560, 630, 830, 930, Herkules series; Scan Graphic's FPI Largo, Rondo, Othello, Tempo, Apollo, Futuro, ScanText 2030, 205; Scitex's (creo/kodak) Dolev 200/250, 400/450, 800, 800V, 800V2, 2/Press, 4/Press, 4/PressV, 4/News; Screen's DT-R1065, 2035, 2065, 3075, Tanto 6120 MT-R 1100; Ultre's 72P, 72E, 94P, 94E; 300, 400, 3000, 4000, 4800; Hewlett Packard's DesignJet 50, 50PS, 1050, 1055, 2500, 3000, 3500, 5000, 5500, 750C, 800; ENCAD's Novajet 500, 630, 700, 850, Pro-36, Pro-42e, Pro-50, Pro 60e; Epson's Stylus Pro 3000, 5000,7000, 7500, 9000, 9500. Defendant Pitman is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

89.     Upon information and belief, Defendant RTI has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored

image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant RTI is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Encad NovaJet 700 /850, Epson Stylus Color 1520, 3000, Stylus Photo 2100, 2200, Stylus Pro 3800 / 4000 / 4800 / 4880 / 5000, 5500, 7000, 7500 / 7600 / 7800 / 7450, 7880 / 9000, 9500 / 9600 / 9800 / 9450, 9880 / 10000, 10600, HP 10PS, 20PS, 50PS, 120, 120nr, 120ps, 90, 90r, 90gp, 130, 130nr, 130gp, HP DesignJet 1050, 1055, Z2100, T610, T1100, 2000, 2500, 3000, 3500, 5000, 5000PS, 5500, 5500PS, Kodak DirectPress 5634, Presstek 34DI-X/ 34DI-E / 52DI, Ryobi 3404 DI / 3404 E-DI / 3404 X-DI, Xerox DocuColor 233 DI-4. Defendant RTI is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

90. Upon information and belief, Defendant Zund has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system,

having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Zund is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: ND UVjet 215 and UVjet 250 digital wide format flatbed printer supported with the Wasatch Rip. Defendant Zund is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

91.     Upon information and belief, Defendant Agfa has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff.

The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, and without limitation, Defendant Agfa is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: AnaPurna printer and Agfa:Apogee workflow solution, Agfa ProSet 9400, 9550, 9600, 9700, 9800, 9836, Agfa Accuset 800, 1000, 1200, 1400, 1500, 1500W, Agfa SelectSet 5000, 7000, Agfa Avantra 20, 25, 25E, 25XT, 30, 30E, 36, 44, 44E, 44XT, and Agfa Phoenix 2000, 2250. Defendant Agfa is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

92.     Upon information and belief, Defendant Fusion has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the

infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, and without limitation, Defendant Fusion is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Agfa's ProSet, AccuSet, SelectSet, Avantra, and Phoenix series; Crossfield's Magnasetter, ECRM's ID36, Pelbox, VR, Mako, Knockout, Marlin, Stingray, Sunfish, Exxtra's Exxtra, Exxcalibur, Maxxima, Hyphen's SpectraSet, Dash; Linotronic' 200 to 630, Monotype's ExpressMaster, Scangraphic's Largo, Othello, Tempo, Apollo, Futuro,

Scantext, Scitex's Dolev, 4Press, 4News, Ultre's Ultresetter, Ultre Vision, 3000/4000/4800 series, and Autologic's III 3850.  Defendant Fusion is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

93.     Upon information and belief, Defendant RIPMall has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The printing device prints the graphic image in response to image data in a first format.  The infringing products have a means for storing image data, storing image data in a second format different from the first format.  The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device.  For example, and without limitation, Defendant

RIPMall is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Agfa ProSet 9400 / 9550 / 9800 / 9836, Agfa Accuset 800 / 1000 / 1000WPlus / 1000Plus / 1200 / 1400 / 1500 / 1500Plus, Agfa SelectSet 5000 / 7000, Avantra 20 / 25 / 25E / 25S / 25XT / 30 / 30E / 36 / 44 / 44E / 44S, ECRM VR 30 / 36 / 36HS / 45 / 45HS, ECRM VRL 36 / 45, ECRM Mako 36 / 36HS / 46 / 46HS / 56 / 108HT / 3600 / 3650HS / 3675 / 4600 / 4650HS / 4675 / 5625, ECRM Sunfish 30 / 40, ECRM Pelbox 72 / 108 / 108HS / 1030 / 1045 / 1045S / 12xx, Scitex Dolev 100, Scitex Dolev 200 / 250, Scitex Dolev 400 / 450, Scitex Dolev 4News / 4Press / 4PressV, Scitex Dolev 800 / 800V.  Defendant RIPMall is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

94.     Upon information and belief, Defendant Durst has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '746 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device

communicates with the data bus via the serial port. The printing device prints the graphic image in response to image data in a first format. The infringing products have a means for storing image data, storing image data in a second format different from the first format. The infringing products have a means for transferring stored image data including conversion means for converting image data in the second format into image data in the first format by multiplexing different portions of the image data in the second format and for delivering image data converted into the first format to the printing device. For example, without limitation, Defendant Durst is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Durst Lambda 130, 131, PI 50 printer with Durst Cheetah raster image processor (RIP). Defendant Durst is thus liable for infringement of the '746 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

95.     On information and belief, to the extent any marking was required by 35 U.S.C. § 287, all predecessors in interest to the '746 Patent complied any with such requirements.

96.     To the extent that facts learned in discovery show that Defendants' infringement of the '746 patent is or has been willful, Plaintiff reserves the right to request such a finding at time of trial.

97.     As a result of these Defendants' infringement of the '746 Patent, Plaintiff has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

98.     Unless a permanent injunction is issued enjoining these Defendants and their agents, servants, employees, representatives, affiliates, and all others acting on in active concert therewith from infringing the '746 Patent, Plaintiff will be greatly and irreparably harmed.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 6,618,157

99.     Plaintiff is the owner by assignment of United States Patent No. 6,618,157 ("the '157 Patent") entitled "Interface Card for Coupling a Computer to an External Device." The '157 Patent issued on September 9, 2003. A true and correct copy of the '157 Patent is attached as Exhibit B.

100.    Upon information and belief, Defendant Epson has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Epson is marketing, distributing, using, selling, offering to sell, and offering to

provide support services for the following products: Epson Stylus® Pro Printers 3800, 4880, 7880, 9880, 11880, GS6000 and 4800, 7800, 9800, 4000, 5500, 7600, 9600, 10600, 10000 with Onyx, Colorburst, PosterJet, Wasatch, and Harlequin RIPs and Teriostar LP-1020 Series, IP-4010, IP-4500, ColorPainter 64S, 100S printers with Seiko's Terioplot RIP.  Defendant Epson is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

101.    Upon information and belief, Defendant Kodak has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The serial port is driven by software independent of the operating system.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices.  For example, without limitation, Defendant Kodak is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: ovajet, VinylJet, and CadJet series printers

with RIPs from one or more of Caldera Graphics, Colorburst Systems, ColorGate – PhotoRIP, Global Graphics,  Image Technologies, Onyx Graphics, Scanvec Amiable, Wasatch Computer Technology.  Defendant Kodak is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271.

102.    Upon information and belief, Defendant Fujifilm has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The serial port is driven by software independent of the operating system.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices.  For example, without limitation, Defendant Fujifilm is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Inca Printers, including the Spyder 320 Q, Spyder 320-8 Series, Spyder 320+ six colour, Spyder 320+ white, Spyder 320, Spyder 320-e,

Spyder 150, Turbo Plus, Turbo Plus 220, Inca Onset and Inca FastJet printers with the Wasatch PC Rip. Defendant Fujifilm is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271.

103. Upon information and belief, Defendant Founder has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Founder is marketing, distributing, using, selling, offering to sell, and offering to provide support services for: interface adapter cards for a multitude of printing devices including AGFA's AccuSet, SelectSet, Avantra, Phoenix; Heidelberg's Linotype-Hell Herkules, Quasar, Signasetter, LinoType-Hell, R30x0PS; ECRM's VRL, Marlin, StingRay; and various other

imagesetter models from: Dainippon, Kodak/CreoScitex, Ultre, Fujifilm, Cron, and Roland. Defendant Founder is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

104.    Upon information and belief, Defendant Gandi has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Gandi is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Jeti Printers with Wasatch SoftRip, Onyx PosterShop, and Caldera RIP or Shiraz RIP. Defendant Gandi is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

105.     Upon information and belief, Defendant Gandi LLC has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The serial port is driven by software independent of the operating system.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices.  For example, without limitation, Defendant Gandi LLC is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Jeti Printers with Wasatch SoftRip, Onyx PosterShop, and Caldera RIP   or Shiraz RIP.   Defendant Gandi LLC is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

106.     Upon information and belief, Defendant Printware has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the

United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Printware is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: HighWatersTorrent RIP and PCI interface boards interfacing with and enabling output to a wide range of high quality imagesetter output printing devices including Agfa's ProSet, AccuSet, SelectSet, Avantra, and Phoenix series; Crossfield's Magnasetter, ECRM's ID36, Pelbox, VR, Mako, Knockout, Marlin, Stingray, Sunfish, Exxtra's Exxtra, Exxcalibur, Maxxima, Hyphen's SpectraSet, Dash; Linotronic' 200 to 630, Monotype's ExpressMaster, Scangraphic's Largo, Othello, Tempo, Apollo, Futuro, Scantext, Scitex's Dolev, 4Press, 4News, Ultre's Ultresetter, Ultre Vision, 3000/4000/4800 series, and Autologic's III 3850, Canon's BX, BXII. Defendant Printware is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

107.    Upon information and belief, Defendant HighWater has been and now is directly

infringing, and indirectly infringing by way of inducing infringement and/or contributing to the

infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the

United Stated, by, among other things, making, using, selling and offering to sell a product

and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff.

The infringing products include a computer, or its equivalent, controlled by an operating system,

having a motherboard which carries a data bus and a random access memory.  The infringing

products also have a means for storing image data in the random access memory, an interface

card connected to the data bus and having a serial port connected to the data bus.  Furthermore,

the infringing products have a printing device interface, and means for transferring stored image

data from the random access memory to the printing device interface.  The serial port is driven

by software independent of the operating system.  The digital printing device is connected to the

interface for printing the graphic image on the substrate on the basis of stored image data

transferred from the random access memory.  The digital printing device communicates with the

data bus via the serial port.  The interface card includes means for reconfiguring the interface

card in order to interface to different digital printing devices.  For example, without limitation,

Defendant HighWater is marketing, distributing, using, selling, offering to sell, and offering to

provide support services for the following products: HighWatersTorrent RIP and  PCI interface

boards interfacing with and enabling output to a wide range of high quality imagesetter output

printing devices including Agfa's ProSet, AccuSet, SelectSet, Avantra, and Phoenix series;

Crossfield's Magnasetter, ECRM's ID36, Pelbox, VR, Mako, Knockout, Marlin, Stingray,

Sunfish, Exxtra's Exxtra, Exxcalibur, Maxxima, Hyphen's SpectraSet, Dash; Linotronic' 200 to

630, Monotype's ExpressMaster, Scangraphic's Largo, Othello, Tempo, Apollo, Futuro,

Scantext, Scitex's Dolev, 4Press, 4News, Ultre's Ultresetter, Ultre Vision, 3000/4000/4800 series, and Autologic's III 3850, Canon's BX, BXII. Defendant HighWater is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

108. Upon information and belief, Defendant HP has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant HP is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: ColorSpan 5440uv, 5460uv, 5445uv, 5465uv, 9840uv, and HP Designjet H35100, H35500, H45100, H45500, HP Scitex FB910; with the HP RIP which includes the PCI VideoNet Interface Card; and Indigo presses 3250, 3050, 5000, 5500

with the HP Production Mgr, Smartstream Production Pro Print Server and HP Indigo Scalable RIP. Defendant HP is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

109. Upon information and belief, Defendant HP ColorSpan has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant HP ColorSpan is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: ColorSpan 5440uv, 5460uv, 5445uv, 5465uv, 9840uv, and HP Designjet H35100, H35500, H45100, H45500, HP Scitex FB910; with

the HP RIP which includes the PCI VideoNet Interface Card.  Defendant HP ColorSpan is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

110.    Upon information and belief, Defendant Indigo has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The serial port is driven by software independent of the operating system.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices.  For example, without limitation, Defendant Indigo is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Indigo presses 3250, 3050, 5000, 5500 with the HP Production Mgr, Smartstream Production Pro Print Server and HP Indigo Scalable RIP. Defendant Indigo is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

111.     Upon information and belief, Defendant Inca has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The serial port is driven by software independent of the operating system.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices.  For example, without limitation, Defendant Inca is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Inca Printers, including the Spyder 320 Q, Spyder 320-8 Series, Spyder 320+ six colour, Spyder 320+ white, Spyder 320, Spyder 320-e, Spyder 150, Turbo Plus, Turbo Plus 220, Inca Onset and Inca FastJet printers with the Wasatch PC Rip. Defendant Inca is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

112.    Upon information and belief, Defendant Mimaki has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The serial port is driven by software independent of the operating system.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices.  For example, without limitation, Defendant Mimaki is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Mimaki JV3, JV4, JV5, JV33, the DS Series, JF, UFJ series, DM2-1810, and the TX and GP family of printers with Mikamis' RasterLinkPro II or III RIP or Wasatch, ErgoSoft, Onyx RIPs.  Defendant Mimaki is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

113.    Upon information and belief, Defendant Mutoh has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the

infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Mutoh is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Mutoh wide-format printers, including the Falcon Series, Blizzard Series, Spitfire Series, ValueJet Series, Toucan (PJ) Series, Mutoh's re-branded printers for Kodak, Agfa, Accuplot, SignWarehouse, Epson, Tektronix (Phaser 600); which utilize various RIPs including Mutoh's ISIS Print Manager, Mutoh's Thunderbird Print Server and Caldera, Wasatch, Harlequin, Onyx RIPs. Defendant Mutoh is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

114. Upon information and belief, Defendant Oce has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the

infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Oce is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Océ 3165, Océ Doc Setter, VarioPrint 2000 and 2100 series, Océ CPS900, Océ CPS800, Océ VarioPrint 6250, CS620, CS650 and Océ VarioPrint® 5000 series, Océ VarioStream 7000 printers, Océ VarioStream 9000 series supported by the Oce SRA3 (Scalable Raster Architecture) Print controller. Defendant Oce is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

115.    Upon information and belief, Defendant Oce Imagistics has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere

in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Oce Imagistics is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Océ 3165, Océ Doc Setter, VarioPrint 2000 and 2100 series, Océ CPS900, Océ CPS800, Océ VarioPrint 6250, CS620, CS650 and Océ VarioPrint® 5000 series, Océ VarioStream 7000 printers, Océ VarioStream 9000 series supported by the Oce SRA3 (Scalable Raster Architecture) Print controller. Defendant Oce Imagistics is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

116.    Upon information and belief, Defendant Oce Better Business has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere

in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Oce Better Business is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Océ 3165, Océ Doc Setter, VarioPrint 2000 and 2100 series, Océ CPS900, Océ CPS800, Océ VarioPrint 6250, CS620, CS650 and Océ VarioPrint® 5000 series, Océ VarioStream 7000 printers, Océ VarioStream 9000 series supported by the Oce SRA3 (Scalable Raster Architecture) Print controller. Defendant Oce Better Business is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

117.    Upon information and belief, Defendant Roland has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the

United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory.  The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus.  Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface.  The serial port is driven by software independent of the operating system.  The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory.  The digital printing device communicates with the data bus via the serial port.  The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices.  For example, without limitation, Defendant Roland is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Roland's Versacam, Soljet, AdvancedJet, and Hi-Fi family of print devices with Roland's VersaWorks or Colorip  RIPs or with Wasatch, Caldera, or Onyx RIPs.  Defendant Roland is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

118.    Upon information and belief, Defendant Roland USA has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff.

The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Roland USA is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Roland's Versacam, Soljet, AdvancedJet, and Hi-Fi family of print devices with Roland's VersaWorks or Colorip RIPs or with Wasatch, Caldera, or Onyx RIPs. Defendant Roland USA is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

119. Upon information and belief, Defendant Xante has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing

products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Xante is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xante/RIPit software RIP, ImagerQ Concerto or OpenRIP Symphony products on workstation PC with Engine Interface Board to deliver print image content to various printing devices including Agfa AccuSet 800, 1000, 1200, 1500, Agfa Avantra 25, 30, 36, 44, Agfa SelectSet 5000, 7000, Agfa/Compugraphic 9400, 9550, 9600, 9800, 9836 and ECRM VR 30, 36, 45, ID-36, Mako 3625, 3675, 4625, 4675, 5625, 108HT, Oasis 3650, Oasis 4650, Knockout 4550, Marlin 2500, 2500HS, 3500, Stingray 5200, 6300, 6300HS; Linotype 200, 230, 260, 300, 330, 500, 530, 560 Ultresetter 72P, 72E, 94P, 94E, Ultre 3000, 4000, Vision 300, Vision 400, ExxtraSetter 300, Exxpress 300 (infrared versions – all metal chassis), RIPit SpeedSetter x1, SpeedSetter x2 (infrared versions – all metal chassis). Defendant Xante is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

120. Upon information and belief, Defendant Xitron has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the

infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Xitron is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xitron Navigator RIP, using a universal interface card in to deliver print image content to various printing devices including Agfa's - ProSet 9550, 9700, 9800, 9836; Accuset 800, 1000, 1200, 1400,1500; SelectSet 5000, 7000; Avantra 20, 25/25E/25S/25XT, 30/30E, 36, 44/44E, 44S; ProSet 9400; Autologic's 3850, 3850 Turbo, 3850 Aspen SST, ECRM's VR 30, 36, 36HS, 45, 45HS;VRL 36, 45; Pelbox 108, 108HS, 1030, 1045, 1045HS, 12xx series, 15xx series, 2030, 2530, 3000, 3030, Mako 108HT, 3600, 3650, 4600, 4650; Knockout 4550; Marlin 46, 63, 2500 and Stingray 46, 52, 63, Fuji's Javelin Luxel T9000 CTP (a.k.a. Javelin 8000), Dart (a.k.a. Luxel T-6000); Heidelberg's Topsetter

Screen PT-R 8000, Topsetter PF 102 Screen PT-R 8600, Primesetter; Linotype's 200P, 200SQ, 230 300D, 500D, 300, 330, 500, 530, 560, 630, 830, 930, Herkules series; Scan Graphic's FPI Largo, Rondo, Othello, Tempo, Apollo, Futuro, ScanText 2030, 205; Scitex's (creo/kodak) Dolev 200/250, 400/450, 800, 800V, 800V2, 2/Press, 4/Press, 4/PressV, 4/News; Screen's DT-R1065, 2035, 2065, 3075, Tanto 6120 MT-R 1100; Ultre's 72P, 72E, 94P, 94E; 300, 400, 3000, 4000, 4800; Hewlett Packard's DesignJet 50, 50PS, 1050, 1055, 2500, 3000, 3500, 5000, 5500, 750C, 800; ENCAD's Novajet 500, 630, 700, 850, Pro-36, Pro-42e, Pro-50, Pro 60e; Epson's Stylus Pro 3000, 5000,7000, 7500, 9000, 9500. Defendant Xitron is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

121. Upon information and belief, Defendant GE Richards has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the

data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant GE Richards is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xitron Navigator RIP, using a universal interface card in to deliver print image content to various printing devices including Agfa's - ProSet 9550, 9700, 9800, 9836; Accuset 800, 1000, 1200, 1400,1500; SelectSet 5000, 7000; Avantra 20, 25/25E/25S/25XT, 30/30E, 36, 44/44E, 44S; ProSet 9400; Autologic's 3850, 3850 Turbo, 3850 Aspen SST, ECRM's VR 30, 36, 36HS, 45, 45HS;VRL 36, 45; Pelbox 108, 108HS, 1030, 1045, 1045HS, 12xx series, 15xx series, 2030, 2530, 3000, 3030, Mako 108HT, 3600, 3650, 4600, 4650; Knockout 4550; Marlin 46, 63, 2500 and Stingray 46, 52, 63, Fuji's Javelin Luxel T9000 CTP (a.k.a. Javelin 8000), Dart (a.k.a. Luxel T-6000); Heidelberg's Topsetter Screen PT-R 8000, Topsetter PF 102 Screen PT-R 8600, Primesetter; Linotype's 200P, 200SQ, 230 300D, 500D, 300, 330, 500, 530, 560, 630, 830, 930, Herkules series; Scan Graphic's FPI Largo, Rondo, Othello, Tempo, Apollo, Futuro, ScanText 2030, 205; Scitex's (creo/kodak) Dolev 200/250, 400/450, 800, 800V, 800V2, 2/Press, 4/Press, 4/PressV, 4/News; Screen's DT-R1065, 2035, 2065, 3075, Tanto 6120 MT-R 1100; Ultre's 72P, 72E, 94P, 94E; 300, 400, 3000, 4000, 4800; Hewlett Packard's DesignJet 50, 50PS, 1050, 1055, 2500, 3000, 3500, 5000, 5500, 750C, 800; ENCAD's Novajet 500, 630, 700, 850, Pro-36, Pro-42e, Pro-50, Pro 60e; Epson's Stylus Pro 3000, 5000,7000, 7500, 9000, 9500. Defendant GE Richards is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

122. Upon information and belief, Defendant Torg has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the

United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Torg is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xitron Navigator RIP, using a universal interface card in to deliver print image content to various printing devices including Agfa's -ProSet 9550, 9700, 9800, 9836; Accuset 800, 1000, 1200, 1400,1500; SelectSet 5000, 7000; Avantra 20, 25/25E/25S/25XT, 30/30E, 36, 44/44E, 44S; ProSet 9400; Autologic's 3850, 3850 Turbo, 3850 Aspen SST, ECRM's VR 30, 36, 36HS, 45, 45HS;VRL 36, 45; Pelbox 108, 108HS, 1030, 1045, 1045HS, 12xx series, 15xx series, 2030, 2530, 3000, 3030, Mako 108HT, 3600, 3650, 4600, 4650; Knockout 4550; Marlin 46, 63, 2500 and Stingray 46, 52, 63, Fuji's Javelin Luxel T9000 CTP (a.k.a. Javelin 8000), Dart (a.k.a. Luxel T-6000); Heidelberg's Topsetter Screen PT-R 8000, Topsetter PF 102 Screen PT-R 8600, Primesetter; Linotype's 200P, 200SQ, 230 300D, 500D,

300, 330, 500, 530, 560, 630, 830, 930, Herkules series; Scan Graphic's FPI Largo, Rondo, Othello, Tempo, Apollo, Futuro, ScanText 2030, 205; Scitex's (creo/kodak) Dolev 200/250, 400/450, 800, 800V, 800V2, 2/Press, 4/Press, 4/PressV, 4/News; Screen's DT-R1065, 2035, 2065, 3075, Tanto 6120 MT-R 1100; Ultre's 72P, 72E, 94P, 94E; 300, 400, 3000, 4000, 4800; Hewlett Packard's DesignJet 50, 50PS, 1050, 1055, 2500, 3000, 3500, 5000, 5500, 750C, 800; ENCAD's Novajet 500, 630, 700, 850, Pro-36, Pro-42e, Pro-50, Pro 60e; Epson's Stylus Pro 3000, 5000,7000, 7500, 9000, 9500. Defendant Torg is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

123. Upon information and belief, Defendant Pitman has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface

card in order to interface to different digital printing devices. For example, without limitation, Defendant Pitman is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Xitron Navigator RIP, using a universal interface card in to deliver print image content to various printing devices including Agfa's - ProSet 9550, 9700, 9800, 9836; Accuset 800, 1000, 1200, 1400,1500; SelectSet 5000, 7000; Avantra 20, 25/25E/25S/25XT, 30/30E, 36, 44/44E, 44S; ProSet 9400; Autologic's 3850, 3850 Turbo, 3850 Aspen SST, ECRM's VR 30, 36, 36HS, 45, 45HS;VRL 36, 45; Pelbox 108, 108HS, 1030, 1045, 1045HS, 12xx series, 15xx series, 2030, 2530, 3000, 3030, Mako 108HT, 3600, 3650, 4600, 4650; Knockout 4550; Marlin 46, 63, 2500 and Stingray 46, 52, 63, Fuji's Javelin Luxel T9000 CTP (a.k.a. Javelin 8000), Dart (a.k.a. Luxel T-6000); Heidelberg's Topsetter Screen PT-R 8000, Topsetter PF 102 Screen PT-R 8600, Primesetter; Linotype's 200P, 200SQ, 230 300D, 500D, 300, 330, 500, 530, 560, 630, 830, 930, Herkules series; Scan Graphic's FPI Largo, Rondo, Othello, Tempo, Apollo, Futuro, ScanText 2030, 205; Scitex's (creo/kodak) Dolev 200/250, 400/450, 800, 800V, 800V2, 2/Press, 4/Press, 4/PressV, 4/News; Screen's DT-R1065, 2035, 2065, 3075, Tanto 6120 MT-R 1100; Ultre's 72P, 72E, 94P, 94E; 300, 400, 3000, 4000, 4800; Hewlett Packard's DesignJet 50, 50PS, 1050, 1055, 2500, 3000, 3500, 5000, 5500, 750C, 800; ENCAD's Novajet 500, 630, 700, 850, Pro-36, Pro-42e, Pro-50, Pro 60e; Epson's Stylus Pro 3000, 5000,7000, 7500, 9000, 9500. Defendant Pitman is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

124. Upon information and belief, Defendant RTI has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product

and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant RTI is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Encad NovaJet 700 /850, Epson Stylus Color 1520, 3000, Stylus Photo 2100, 2200, Stylus Pro 3800 / 4000 / 4800 / 4880 / 5000, 5500, 7000, 7500 / 7600 / 7800 / 7450, 7880 / 9000, 9500 / 9600 / 9800 / 9450, 9880 / 10000, 10600, HP 10PS, 20PS, 50PS, 120, 120nr, 120ps, 90, 90r, 90gp, 130, 130nr, 130gp, HP DesignJet 1050, 1055, Z2100, T610, T1100, 2000, 2500, 3000, 3500, 5000, 5000PS, 5500, 5500PS, Kodak DirectPress 5634, Presstek 34DI-X/ 34DI-E / 52DI, Ryobi 3404 DI / 3404 E-DI / 3404 X-DI, Xerox DocuColor 233 DI-4. Defendant RTI is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

125. Upon information and belief, Defendant Zund has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the

infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Zund is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: ND UVjet 215 and UVjet 250 digital wide format flatbed printer supported with the Wasatch Rip. Defendant Zund is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

126.    Upon information and belief, Defendant Agfa has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff.

The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Agfa is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: AnaPurna printer and Agfa:Apogee workflow solution, Agfa ProSet 9400, 9550, 9600, 9700, 9800, 9836, Agfa Accuset 800, 1000, 1200, 1400, 1500, 1500W, Agfa SelectSet 5000, 7000, Agfa Avantra 20, 25, 25E, 25XT, 30, 30E, 36, 44, 44E, 44XT, and Agfa Phoenix 2000, 2250. Defendant Agfa is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

127.    Upon information and belief, Defendant Fusion has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system,

having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Fusion is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Agfa's ProSet, AccuSet, SelectSet, Avantra, and Phoenix series; Crossfield's Magnasetter, ECRM's ID36, Pelbox, VR, Mako, Knockout, Marlin, Stingray, Sunfish, Exxtra's Exxtra, Exxcalibur, Maxxima, Hyphen's SpectraSet, Dash; Linotronic' 200 to 630, Monotype's ExpressMaster, Scangraphic's Largo, Othello, Tempo, Apollo, Futuro, Scantext, Scitex's Dolev, 4Press, 4News, Ultre's Ultresetter, Ultre Vision, 3000/4000/4800 series, and Autologic's III 3850. Defendant Fusion is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

128. Upon information and belief, Defendant RIPMall has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff.

The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant RIPMall is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Agfa ProSet 9400 / 9550 / 9800 / 9836, Agfa Accuset 800 / 1000 / 1000WPlus / 1000Plus / 1200 / 1400 / 1500 / 1500Plus, Agfa SelectSet 5000 / 7000, Avantra 20 / 25 / 25E / 25S / 25XT / 30 / 30E / 36 / 44 / 44E / 44S, ECRM VR 30 / 36 / 36HS / 45 / 45HS, ECRM VRL 36 / 45, ECRM Mako 36 / 36HS / 46 / 46HS / 56 / 108HT / 3600 / 3650HS / 3675 / 4600 / 4650HS / 4675 / 5625, ECRM Sunfish 30 / 40, ECRM Pelbox 72 / 108 / 108HS / 1030 / 1045 / 1045S / 12xx, Scitex Dolev 100, Scitex Dolev 200 / 250, Scitex Dolev 400 / 450, Scitex Dolev 4News / 4Press / 4PressV, Scitex Dolev 800 / 800V. Defendant RIPMall is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

129. Upon information and belief, Defendant Durst has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the

infringement of the '157 Patent in the State of Texas, in this judicial district, and elsewhere in the United Stated, by, among other things, making, using, selling and offering to sell a product and/or a method thereof, for printing a graphic image on a substrate, to the injury of Plaintiff. The infringing products include a computer, or its equivalent, controlled by an operating system, having a motherboard which carries a data bus and a random access memory. The infringing products also have a means for storing image data in the random access memory, an interface card connected to the data bus and having a serial port connected to the data bus. Furthermore, the infringing products have a printing device interface, and means for transferring stored image data from the random access memory to the printing device interface. The serial port is driven by software independent of the operating system. The digital printing device is connected to the interface for printing the graphic image on the substrate on the basis of stored image data transferred from the random access memory. The digital printing device communicates with the data bus via the serial port. The interface card includes means for reconfiguring the interface card in order to interface to different digital printing devices. For example, without limitation, Defendant Durst is marketing, distributing, using, selling, offering to sell, and offering to provide support services for the following products: Durst Lambda 130, 131, PI 50 printer with Durst Cheetah raster image processor (RIP). Defendant Durst is thus liable for infringement of the '157 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

130. On information and belief, to the extent any marking was required by 35 U.S.C. § 287, all predecessors in interest to the '157 Patent complied any with such requirements.

131. To the extent that facts learned in discovery show that Defendants' infringement of the '157 patent is or has been willful, Plaintiff reserves the right to request such a finding at time of trial.

132.     As a result of these Defendants' infringement of the '157 Patent, Plaintiff has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

133.     Unless a permanent injunction is issued enjoining these Defendants and their agents, servants, employees, representatives, affiliates, and all others acting on in active concert therewith from infringing the '157 Patent, Plaintiff will be greatly and irreparably harmed.


## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter:

1.     A judgment in favor of Plaintiff that Defendants have infringed, directly, jointly, and/or indirectly, by way of inducing and/or contributing to the infringement of the '746 Patent;

2.     A judgment in favor of Plaintiff that Defendants have infringed, directly, jointly, and/or indirectly, by way of inducing and/or contributing to the infringement of the '157 Patent;

3.     A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '746 Patent;

4.     A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '157 Patent;

5.     A judgment and order requiring Defendants to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '746 Patent as provided under 35 U.S.C. § 284;

6.     A judgment and order requiring Defendants to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '157 Patent as provided under 35 U.S.C. § 284;

7.     An award to Plaintiff for enhanced damages resulting from the knowing, deliberate, and willful nature of Defendants' prohibited conduct with notice being made at least as early as the date of the filing of this Complaint, as provided under 35 U.S.C. § 284;

8.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

9.     Any and all other relief to which Plaintiff may show itself to be entitled.


## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Respectfully submitted,

**WHETSTONE ELECTRONICS, LLC**

Dated: August 6, 2008                    By: /s/Daniel F. Perez

Daniel F. Perez
Texas State Bar No. 15776380
The Perez Law Firm
6131 Park Lane
Dallas, Texas 75225
Telephone: (214) 289-6659
E-mail:  dan@pereziplaw.com

Guy N. Harrison
Texas State Bar No. 00000077
Law Offices of Guy N. Harrison
217 N. Center Street
Longview, TX 75601
Telephone: (903) 758 - 7361
Fax: (903) 753 - 9557

**ATTORNEYS FOR PLAINTIFF**
**Whetstone Electronics, LLC**